## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

CHRISTOPHER LACCINOLE,

      Plaintiff,

v.                                                            Action No. 2:21cv507

COVA HOME REALTY LLC, *et al.*,

      Defendants.

### UNITED STATES MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

     This matter is before the Court on *pro se* plaintiff Christopher Laccinole's ("plaintiff") motion for default judgment.[1]  ECF No. 83.  Plaintiff seeks default judgment against defendants Kelly Liedtke ("Liedtke") and KD Homes VA LLC ("KD Homes").  On November 24, 2025, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b).  ECF No. 87.

     For the reasons stated herein, the Court **RECOMMENDS** that plaintiff's motion for default judgment , ECF No. 83, be **GRANTED IN PART** and **DENIED IN PART**.

### I.      PROCEDURAL HISTORY

     On September 13, 2021, plaintiff filed a complaint against Cova Home Realty, LLC ("Cova").  ECF No. 1.  Through subsequent investigation and with leave of the Court, plaintiff amended his complaint twice on December 30, 2021, and November 28, 2022.  ECF Nos. 14, 23.

---

[1] On November 24, 2025, United States District Judge Raymond A. Jackson construed the motion titled as a motion for summary judgment as a motion for default judgment when referring this matter to the undersigned.  ECF No. 87.

The second amended complaint added three new defendants, Randolph James Tappen ("Tappen"), Liedtke, and KD Homes. ECF No. 23. Both Cova and Tappen appeared in this matter on December 12, 2022, by filing a motion to dismiss the second amended complaint for failure to state a claim. ECF No. 26. Liedtke and KD Homes failed to appear and the Clerk entered their defaults, pursuant to Federal Rule of Civil Procedure 55(a), on January 17, 2023. ECF No. 31.

Plaintiff moved for default judgment against Liedtke and KD Homes on March 1, 2023, ECF No. 36, which was denied without prejudice on September 19, 2023, because plaintiff failed to send a copy of his motion to Liedtke and KD Homes, ECF No. 42, at 7–8. Plaintiff renewed his motion on October 30, 2023, ECF No. 47, which was again denied without prejudice on June 27, 2024, as it was premature to seek default judgment based on joint and several liability when some defendants still contested the merits, ECF No. 52. On February 13, 2025, Cova and Tappen were dismissed from the case and plaintiff was ordered to file a renewed motion for default judgment by March 6, 2025. ECF No. 82. Plaintiff filed a motion for summary judgment on March 5, 2025, which the Court construed as a motion for default judgment.[2] ECF Nos. 83, 87. On December 12, 2025, the Court ordered plaintiff to schedule a hearing and a copy of the order was sent to Liedtke and KD Homes. ECF No. 88. On January 23, 2026, the Court held a hearing at which plaintiff appeared, but Liedtke and KD Homes did not. ECF No. 89.

---

[2] Plaintiff sent a copy of his motion for default judgment to both Liedtke and KD Homes. ECF No. 86.

## II.    **FACTUAL BACKGROUND**[3]

On February 10, 2005, plaintiff registered his personal phone number with a Virginia area code on the National Do-Not Call Registry ("NDNCR"). Pl.'s Second Am. Compl. ("Compl."), ECF No. 23, ¶¶ 13, 138. Plaintiff also purchased a "wireless cellular telephone . . . for residential purposes only" in 2019. *Id.* ¶ 45. In June 2021, plaintiff began to receive telemarketing phone calls and text messages from callers representing that they were reaching out on behalf of Cova. *Id.* ¶ 48.

The first text message was sent on June 24, 2021, at 7:27 a.m. from "Paolo's assistant w/Cova Home Realty" using the phone number 757-231-9196. *Id.* ¶ 49. The sender inquired whether they had reached "Pam" and whether Pam had "zeroed in on any neighborhoods or school zones" in her search for Suffolk homes. *Id.* The message further explained that Pam could tell the sender if she was not interested in receiving texts. *Id.* Two hours later, the sender inquired, using the same number, whether they had reached Pam and sent a link with listings in the Suffolk area. *Id.* ¶¶ 53–54. This link directed plaintiff to a website displaying Cova's logo, which is the same logo used by Tappen, Cova's principal broker, on his Facebook page. *Id.* ¶¶ 54, 60–62. From June 25 to August 9, 2021, plaintiff received 11 additional text messages from this same number. *Id.* ¶¶ 68–72. Each message, though uniquely worded, offered the same general real estate services. *Id.*

In September 2021, plaintiff began to receive calls and texts from a new number, 757-280-4177. *Id.* ¶ 96. Plaintiff first received a call from this number on September 12, 2021, at 2:18 p.m. which ended before plaintiff could answer. *Id.* One minute later, the same number sent plaintiff

---

[3] As defendants have failed to answer the second amended complaint, the well-pleaded allegations of facts set forth therein are deemed admitted. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

a text in which the sender inquired whether plaintiff was still interested in purchasing a home in the next 24 months and identified himself as "Paolo Villaflor [("Villaflor")] with K&D Homes VA." *Id.* ¶ 98. Plaintiff alleges that "K&D Homes VA" is an alias for KD Homes, which is managed by Liedtke. *Id.* ¶ 102, 104. KD Homes also represented on a website that it was affiliated with the Crush Real Estate Team ("Crush") which is "an affiliate or work group within Cova." *Id.* ¶¶ 87, 102. According to Liedtke's Facebook account, she also claimed to work for the "Crush Real Estate Team at Cova Home Realty" as a real estate agent. *Id.* ¶ 105. Crush callers sometimes represented that they worked with both Cova and Crush. *See, e.g., id.* ¶ 116. Plaintiff received two more calls from the same number (4177) on November 21 and December 16, 2021. *Id.* ¶ 109. On December 16, 2021, plaintiff received another text from Villaflor using the same number (4177). *Id.* ¶ 110. This text was identical to the September 12, 2021 text, except that Villaflor stated that he was "with [the] Crush Real Estate Team." *Id.*

On at least two occasions, plaintiff informed agents of Cova that he no longer wished to receive their advertising texts or calls. On October 19, 2021, plaintiff responded to 757-231-9196, the first number to text him, to inform the sender that they had the wrong number and that he would no longer like to receive calls or texts. *Id.* ¶ 77. On January 7, 2022, plaintiff also told defense counsel for Cova that he was still receiving calls and text messages, even after serving Cova with his original complaint. *Id.* ¶ 82.

Despite these requests, plaintiff continued to receive calls and texts. *Id.* ¶ 85. On January 22, 2022, plaintiff received a text message from a new number, 757-244-9835, addressed to Pam and asking whether Pam was interested in buying, selling, or investing in a rental property. *Id.* ¶ 86. This message was from "Natalie w/ Crush Real Estate Team @ Cova Home Realty." *Id.* The same number called plaintiff two hours later and again on February 2, 2022. *Id.* ¶¶ 88–89.

4

When the same number called for a third time on March 3, 2022, plaintiff answered and "heard a woman's voice saying her name was 'Natalie from Cova Home Realty.'" *Id.* ¶¶ 90–91.  One minute after this call ended, the same number texted plaintiff in an attempt to reconnect about properties because the phone call had "disconnected." *Id.* ¶ 92.  In this text, the sender identified herself as "Natalie Bishop COVA Home Realty." *Id.*  Two months later, plaintiff received a final call from this phone number on May 18, 2022, and he spoke with a woman who claimed to be calling from Crush. *Id.* ¶¶ 93–94.

On May 31, 2022, plaintiff received a call from a new number, 757-294-8211, which he was unable to answer in time. *Id.* ¶¶ 114–15.  This call was followed one minute later by a text from "Kealy Fraley COVA Home Realty / Crush Real Estate Team" using the same phone number. *Id.* ¶ 116.  The sender was inquiring whether Pam was still searching for a home. *Id.*  The following day, plaintiff was called by another new number, 757-703-1615, and plaintiff spoke with "Elena Petrova calling from Cova Home Realty." *Id.* ¶¶ 118–21.  This caller similarly wanted to see if plaintiff was still interested in buying a home. *Id.*  A few minutes later, the same number (1615) sent plaintiff a text, addressed to Pam, offering to assist with the home buying process and asking when they could connect. *Id.* ¶ 122.  This text was also from Elena Petrova "with COVA Home Realty." *Id.*  Following this text, plaintiff received "another phone call from the same woman using the same number." *Id.* ¶ 123.  The final phone call occurred on June 9, 2022, from the number 757-280-4177. *Id.* ¶¶ 124–27.  As with the prior communications from this number, the caller identified himself as Villaflor. *Id.*  However, this time he represented that he was with Cova. *Id.*

In total, plaintiff received 30 calls and text messages from six different phone numbers allegedly associated with Cova, KD Homes, and Crush.[4]  *Id.* ¶ 140.  Plaintiff never consented to these messages and he alleges they caused him to lose data storage, deplete his phone's battery life, and use up his limited text messages associated with his cellphone plan.  *Id.* ¶¶ 44, 147, 155–57.  Plaintiff brought eight counts against Liedtke and KD Homes, asserting that by making these 30 calls and texts, they jointly and severally violated the various provisions of the Telephone Consumer Protection Act ("TCPA") (Counts I–V) and the Virginia Telephone Privacy Protection Act ("VTPPA") (Counts VI–VIII).  *Id.* ¶¶ 158–205.

### III.    JURISDICTIONAL ISSUES

**A.    Jurisdiction, Venue, and Service of Process**

Under 28 U.S.C. § 1357, a district court has original subject matter jurisdiction over "any civil action commenced by any person to recover damages for any injury to his person or property on account of any act done by him, under any Act of Congress."  A district court also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  Here, plaintiff's first five counts fall within the Court's original subject matter jurisdiction because plaintiff has brought them pursuant to an act of Congress, 47 U.S.C. § 227.  Compl. ¶¶ 158–84.  As each of plaintiff's claims arises out of the same 30 phone calls, the remaining three counts fall within the Court's supplemental jurisdiction.

---

[4] Plaintiff alleges that he received "at least" 30 calls and text messages, but only requests recovery for 30.  Compl. ¶¶ 140, 158–205.

To enter a default judgment, the Court must have proper personal jurisdiction over each defaulting party. *Foster v. Arletty 3 S.A.R.L.*, 278 F.3d 409, 414 (4th Cir. 2002) (citing *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir. 1992)). Proper personal jurisdiction requires service of process, without which the court's ruling would be void. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys.*, 733 F.2d 1087, 1087–89 (4th Cir. 1984). Actual notice of the pendency of an action is not required, but notice "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Guerra v. Minx Holdings Inc.*, No. 2:24cv375, 2025 WL 2803552, at *3 (E.D. Va. Sept. 8, 2025) (quoting *Todman v. Mayor & City Council of Baltimore*, 104 F.4th 479, 488 (4th Cir. 2024)).

Federal Rule of Civil Procedure 4(e) provides that an individual may be served in the United States by either:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). A corporation may be served in the United States by either complying with Rule 4(e)(1) above or

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive

service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1).

Plaintiff has established that service of process was properly made on both Liedtke and KD Homes. According to the Virginia State Corporation Commission Clerk's Information System, "Kelly Liedtke" was listed as the registered agent for "KD Homes VA LLC" from its formation on July 1, 2021, until its registration was cancelled for failure to pay the fee on July 31, 2023.[5] The address included with this registration is the same address in the second amended complaint and is where the process server was able to locate Liedtke on both occasions. Compl. ¶ 21; ECF Nos. 32–33. On December 20, 2022, Liedtke personally received service of process on behalf of KD Homes and on December 23, 2022, Liedtke was personally served in her individual capacity at the same address. ECF Nos. 32–33. Therefore, service of process was effected properly on Liedtke in her personal capacity because the process server delivered a copy of the summons and complaint to her directly. Service of process was also proper as to KD Homes because Liedtke was listed as its registered agent at the time that service was delivered to her.

Venue must also be appropriate in the Eastern District of Virginia. *Joe Hand Promotions, Inc. v. Citibars, Inc.*, No. 2:11cv58, 2012 WL 503212, at *1 (E.D. Va. Feb. 8, 2012). Generally, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[5] State Corporation Commission Clerk's Information System, *Business Entity Search*, https://cis.scc.virginia.gov/EntitySearch/Index (last visited Feb. 10, 2026) (enter "KD Homes" into the "Entity ID" box, then select "Search," and then select "KD Homes VA LLC" with the corresponding entity identification number 11249550).

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Plaintiff has alleged that "a substantial part of the events or omissions giving rise to the claims occurred in this [d]istrict, as the telemarketing calls at issue were commissioned from this [d]istrict." Compl. ¶ 11. To support this claim, plaintiff asserts that Cova and KD Homes—the corporations the phone calls were allegedly made on behalf of—are headquartered in the Eastern District of Virginia.[6] *Id.* ¶¶ 15, 21. The complaint further alleges that all of the calls and texts were made from numbers with the area code "757," which services five cities in the Eastern District of Virginia.[7] *Id.* ¶¶ 49–124. Therefore, a substantial part of the events giving rise to plaintiff's claims occurred in the Eastern District of Virginia because the calls were allegedly made by local Virginia numbers on behalf of two local companies. Thus, venue is proper under 28 U.S.C. § 1391(b)(2).

**B.    Standing to Sue**

Standing is a threshold requirement for jurisdiction that may be raised at any time. Where standing is in question, the federal court must decide the issue before reaching the merits of any claim presented. This is because, if a plaintiff lacks Article III standing, the federal court does not have jurisdiction and the case must be dismissed. The standing inquiry ensures that a suit presents a "case or controversy appropriate for the exercise of the courts' judicial powers."

---

[6] Cova admitted to being headquartered in Virginia Beach, Virginia, in its reply. ECF No. 43, ¶ 15. KD Homes admitted to being headquartered in Newport News, Virginia, by failing to answer. *Ryan*, 253 F.3d at 780; Compl. ¶ 21.

[7] *See* Whitepages, *Area Code 757 phone numbers*, https://www.whitepages.com/phone/1-757?msockid=3746b236780665da3d77a4797914640c (last visited Feb. 10, 2026).

*Pub. Int. L. Found., Inc. v. Wooten*, 164 F.4th 362, 365 (4th Cir. 2026) (citations omitted) (quoting

*Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)).

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.,* 528 U.S. 167, 180–81 (2000). Further, the

Supreme Court has identified three other "prudential" elements of standing: (1) "the general

prohibition on a litigant's raising another person's legal rights"; (2) "the rule barring adjudication

of generalized grievances more appropriately addressed in the representative branches"; and (3)

"the requirement that a plaintiff's complaint fall within the zone of interests protected by the law

invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)

(quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

Plaintiff's standing under the TCPA and VTPPA has been challenged before in several of

his numerous cases arising under the TCPA, the VTPPA, or both.[8] Here, none of the defendants

challenged standing and the Court will briefly consider whether the second amended complaint

establishes standing.

The Court finds as an initial matter that plaintiff has suffered an injury in fact as he has

allegedly received 30 calls which have depleted his phone plan's resources; this injury is traceable

to the defendants, as will be discussed below, *see infra* Part V; and the Court can redress this injury

through the remedies provided in 47 U.S.C. § 227(c) and Va. Code Ann. § 59.1-515. Plaintiff's

---

[8] *See* ECF No. 42, at 5 & n.4.

suit also addresses his own injuries, not those of another party, which were not generalized to the public as he alone received these specific calls.

This leaves the Court with the question of whether plaintiff falls within the zone of interest protected by the TCPA and VTPPA. Section 227(c) of Title 47, United States Code, provides a private right of action to a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the[se] regulations." The VTPPA similarly creates a private right of action for "[a]ny natural person who is aggrieved by a violation of this chapter . . . against any responsible person." Va. Code Ann. § 59.1-515(A). As plaintiff is a individual, natural person who has alleged that he received 30 phone calls over a 13-month period in violation of both the TCPA and VTPPA, he falls within the "class of persons to whom the statute grants a right to sue." *FDA v. R.J. Reynolds Vapor Co.*, 606 U.S. 226, 232 (2025).

## IV.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b)(2) when the claim is not for a sum certain. A court is required to "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)).

When a defendant has defaulted, only the well-pleaded allegations of facts set forth in the complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, before

11

entering default judgment, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action that supports the relief sought. *See Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."); *see also Ryan*, 253 F.3d at 780 ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to plaintiff where plaintiff failed to state a valid claim).

Specifically, the court must determine "whether the plaintiff can prove any set of facts that would entitle him to relief" when considering the allegations in the complaint liberally in the plaintiff's favor. *Anderson,* 155 F.3d at 505–06. Additionally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erikson v. Pardus*, 551 U.S. 89, 94 (2007).

Well-pleaded allegations are held to the same standard under default judgment as they are under a motion to dismiss for failure to state a claim upon which relief can be granted. *See Anderson*, 155 F.3d at 505–06 (holding that the district court erred in granting default judgment as the plaintiff had failed to "state a claim on which relief can be granted"); *Wynne v. Birach*, No. 1:09cv15, 2009 WL 3672119, at *2 n.6 (E.D. Va. Nov. 3, 2009) (noting that the standards in

default judgment and on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are similar).[9] This

standard has been summarized by this Court as follows:

> A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." Otherwise, the complaint will "stop short of the line between possibility and plausibility of entitlement to relief."

*Marshall v. Accomack Cnty. Dep't of Pub. Safety*, No. 2:25cv255, 2026 WL 181485, at *2 (E.D.

Va. Jan. 22, 2026). When making this determination, the Court looks to the allegations and

supporting evidence filed in the second amended complaint, as only the well-pleaded allegations

are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d at 736.

## V.    ANALYSIS

Plaintiff has brought eight claims against Liedtke and KD Homes: (1) placing more than

one call or text message to plaintiff's phone without consent, 47 U.S.C. § 227(c)(5); (2) initiating

a call or text to a number on the NDNCR, 47 C.F.R. § 64.1200(c)(2); (3) failing to maintain a

written policy for maintaining a do not call list, *id.* § 64.1200(d)(1); (4) failing to train personnel

engaged in telemarketing, *id.* § 64.1200(d)(2); (5) failing to provide the required identification, *id.*

§ 64.1200(d)(4); (6) initiating a telephone solicitation during prohibited hours, Va. Code Ann.

§ 59.1-511; (7) failing to provide the required identification, *id.* § 59.1-512; and (8) initiating a

telephone solicitation to a number on the NDNCR, *id.* § 59.1-514. Compl. ¶¶ 158–205. Under

---

[9] There has been some debate regarding this point. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544–45 (D. Md. 2011) (collecting cases). However, this Court's precedent in *Wynne* and the Fourth Circuit's precedent in *Anderson* are instructive and point the Court to applying the *Iqbal* and *Twombly* standards to default judgment.

each of his TCPA claims (Counts I–V), plaintiff requests actual damages, statutory damages, an injunction, and a referral to the Virginia Attorney General for prosecution. *Id.* ¶¶ 161, 166, 171, 176, 184. Plaintiff additionally requests statutory damages, an injunction, and attorneys fees and costs for each of his VTPPA claims (Counts VI–VIII). *Id.* ¶¶ 191, 198, 205.

In his motion for default judgment, plaintiff argues that he is entitled to recovery for all eight of the counts in his second amended complaint. ECF No. 84, at 9–19. Plaintiff first addresses the three VTPPA claims and explains which evidence supports each of those claims and that shows these violations were knowing and willful. *Id.* at 9–15. Plaintiff further asserts that the VTPPA provides a presumption of liability for Liedtke and KD Homes, is not preempted by the TCPA, and he is entitled to $150,000 in statutory damages on these counts. *Id.* at 13–15.

Next, plaintiff addresses the claims under the TCPA and contends that Liedtke and KD Homes are liable as the TCPA is "a strict liability statute" and he is entitled to statutory damages of $15,000 for these knowing and willful violations. *Id.* at 15–19. Additionally, plaintiff asserts that vicarious liability applies in this case and "there are no exceptions to escape TCPA liability." *Id.* at 16–17. Finally, plaintiff addresses the additional relief he seeks in the form of pre-judgment and post-judgment interest. *Id.* at 19–22.

## A.      Vicarious Liability

Neither Liedtke nor KD Homes is alleged to have directly called or texted plaintiff. Thus, before advancing to the merits of plaintiff's claims, the analysis must first turn to the threshold issue of whether plaintiff has sufficiently pled that Liedtke and KD Homes are vicariously liable. Plaintiff must have alleged sufficient facts to show that an agency relationship existed between the callers and the defendants to prevail. *See Aaronson v. CHW Grp., Inc.*, No. 1:18cv1533, 2019 WL 8953349, at *3–4 (E.D. Va. Apr. 15, 2019).

14

1.    **The applicable vicarious liability standards.**

Vicarious liability is applicable to the TCPA, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)), and "is governed by the federal common law of agency" for which courts have generally derived support from the Restatement of Agency, *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006). Such manifestation can occur through written or spoken words or other conduct. *Id.* § 1.03.

According to the Third Restatement of Agency, an employer may be liable for a third party's injury caused by the employer's agent when "the agent is an employee who commits a tort while acting in the scope of employment" or "the agent commits a tort when acting with apparent authority in dealing with a third party on or purportedly on behalf of the principal." *Id.* §§ 2.04, 7.03(2).

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

*Id.* § 7.07. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Id.* § 2.03. To establish vicarious liability under the TCPA, a plaintiff must plead facts that show how the caller identified themselves or "other details from the telephone calls that would tend to

15

demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control." *Aaronson*, 2019 WL 8953349, at *2. Therefore, in order to establish that both Liedtke and KD Homes are liable under the TCPA, plaintiff must have alleged facts sufficient to establish vicarious liability under the Third Restatement of Agency.

The VTPPA similarly provides that the responsible person, either the seller[10] or the person who "causes another person to make or initiate[] a telephone solicitation," can be held liable for the caller's actions. Va. Code Ann. §§ 59.1-510, 515. Additionally, the VTPPA provides for a presumption of the seller's liability when the solicitation advertises the seller's property, goods, or services, regardless of the existence of an agency relationship, the seller's supervision of the caller, or whether the seller directed the caller's actions. *Id.* § 59.1-514.1(B). Consequentially, the VTPPA's vicarious liability standard is lower than that of the TCPA and can be met with a mere showing that the caller advertised the seller's property or services.

### 2.    Plaintiff has failed to allege sufficient facts to hold Liedtke vicariously liable.

As to Liedtke, plaintiff has failed to meet his burden to plead sufficient facts to establish her liability. References to Liedtke and the allegations purporting to tie her to the liability of the callers in the second amended complaint are few and far between. Plaintiff summarily alleges that Liedtke served as the manager of KD Homes. Compl. ¶ 104. He further connects Liedtke to Crush because of a screenshot of a Facebook page titled "Kelly Liedtke – Crush Real Estate Team at Cova Home Realty" where she posted using two hashtags with "Cova" in them. *Id.* ¶ 105. Plaintiff

---

[10] "'Seller' means any person on whose behalf or for whose benefit a telephone solicitation offering or advertising the person's property, goods, or services is made or initiated." Va. Code Ann. § 59.1-510.

claims that Crush is an "affiliate or work group within Cova," *id.* ¶ 87, and that KD Homes "maintains a website under the alias 'Crush Real Estate Team,'"[11] *id.* ¶ 102. Plaintiff also alleges that Liedtke "maintain[ed] a policy to keep a 'direct line of communication at all times' to consumers like [p]laintiff from KD Homes VA and the Crush Real Estate Team at Cova Home Realty." *Id.* ¶ 108. Plaintiff attempts, through these facts, to establish that Liedtke may be liable in her supervisory role for the actions of the various callers.

Taking these facts as true and even considering them in the more lenient pleading standard afforded to *pro se* litigants, plaintiff has failed to sufficiently allege that an agency relationship existed between Liedtke and any of the callers. Namely, plaintiff has failed to allege key details to establish this relationship such as: (1) whether Liedtke actually supervised any employees; (2) whether any of the callers possessed apparent authority to act on her behalf; (3) the names of any representatives of KD Homes that she could have managed other than Villaflor; or (4) how any of the callers implemented her direct-line of contact policy. Turning specifically to Villaflor, he is the only named caller who was plausibly connected with KD Homes. *See infra* Part V.A.3. However, the fact that Villaflor identified himself with "K&D Homes VA," *id.* ¶ 110, and Liedtke was a manager of KD Homes is not enough to establish that Liedtke had any authority over Villaflor. This is especially true considering the fact that in every other text or call, Villaflor identified himself as an agent of either Cova or Crush, of which Liedtke is not alleged to be a manager. *See id.* ¶¶ 110, 124–27.

To put it simply, making the bare assertion that Liedtke manages KD Homes is insufficient to establish her liability for any of the calls or texts without more information about who she

---

[11] Plaintiff included a link to the website where he alleges that KD Homes holds itself out as part of Crush. Compl. ¶ 102 n.2. However, the second amended complaint was filed in 2022 and the link no longer contains this information.

actually managed. Therefore, these facts are not sufficient to allege that an employee acting on Liedtke's behalf or direction or possessing apparent authority made any calls to plaintiff and plaintiff has failed to meet his burden under the vicarious liability standards of both the TCPA and VTPPA. Accordingly, Liedtke is not liable for the actions of any of the callers.

### 3. Plaintiff has alleged sufficient facts to find KD Homes vicariously liable for some of the texts and calls.

Turning now to KD Homes, plaintiff has alleged sufficient facts to show that KD Homes was in an agency relationship with Villaflor from September to December 2021. Plaintiff's headings in his second amended complaint are instructive regarding this issue. These headings point the Court to a very limited window of KD Homes' alleged involvement in the calls. The factual allegations in plaintiff's second amended complaint are discussed in four sections: (1) "Factual Allegations," which provides introductory material, *id.* ¶¶ 35–72; (2) "Cova keeps calling plaintiff and sending plaintiff text messages even after filing a dismissal motion in this action," *id.* ¶¶ 73–95; (3) "KD Homes VA LLC and Crush Real Estate *start* robocalling plaintiff on behalf of Cova Home Realty," *id.* ¶¶ 96–111 (emphasis added); and (4) "Cova keeps calling plaintiff and sending plaintiff text messages even after filing a second dismissal motion," *id.* ¶¶ 112–57. In addition to this labeling, plaintiff has only provided evidence to connect KD Homes to the calls under the third heading. The Court addresses the allegations under each heading in the order of the chronological events described in the second amended complaint.

#### a. Plaintiff has not alleged sufficient facts to prove that KD Homes is liable for the conduct under heading one: "Factual Allegations."

KD Homes is not mentioned under the first heading of the second amended complaint's factual allegations. Under heading 1, plaintiff describes the first 13 texts which were all from the same number (9196), identified as "Paolo's Assistant." *Id.* ¶¶ 35–72. Plaintiff only ever alleges

that this person acted on behalf of Cova and the last text was received on August 9, 2021—one month before plaintiff alleges KD Homes began to message him.[12]  *Id.*  Therefore, these 13 text messages are excluded from the KD Homes liability equation as plaintiff himself has not alleged that KD Homes was involved in these texts.

      **b.**      **There are sufficient facts in the second amended complaint to find KD Homes liable for the conduct under heading three: "KD Homes VA LLC and Crush Real Estate *start* robocalling plaintiff on behalf of Cova Home Realty."**

Chronologically, the next allegations plaintiff lists in his second amended complaint are under the third heading.  Plaintiff begins this third section by alleging that on September 12, 2021, KD Homes *started* to contact him.  *Id.* ¶ 96.  Following this allegation, plaintiff describes the following calls and texts:

- a phone call on September 12, 2021, at 2:18 p.m. from 757-280-4177, *id.* ¶ 96;

- a text message on September 12, 2021, at 2:19 p.m. from the same number (4177) from "Paolo Villaflor with K&D Homes VA," *id.* ¶ 98;

- a phone call on November 21, 2021, from the same number (4177),  *id.* ¶ 109;

- a phone call on December 16, 2021, from the same number (4177), *id.*; and

- a text message on December 16, 2021, at 5:21 p.m. from the same number (4177) from "Paolo Villaflor with Crush Real Estate Team," *id.* ¶ 110.

These five are the only calls and texts under section three of the factual allegations in the second amended complaint. *See id.* ¶¶ 96–111.  Each time, the same phone number was used and, on at least two occasions, the sender identified himself as Villaflor.  *Id.*  KD Homes' vicarious

---

[12] Plaintiff alleges that "Paolo's Assistant" is Villaflor's assistant. Compl. ¶ 100. As is explained below, KD Homes' liability can be tied to the actions of Villaflor during a short time period. *See infra* Part V.A.3.c. However, plaintiff's bare assertion that this is Villaflor's assistant coupled with the fact that this person claimed to work for Cova, not KD Homes, and plaintiff's labeling of the second amended complaint's factual allegations, means that this simple fact is not enough to sufficiently allege that these 13 calls and texts were made on behalf of KD Homes.

liability turns on whether it can be held liable for these five calls and texts from Villaflor during this time.

Though there is not enough evidence that Villaflor was one of Liedtke's agents, Villaflor represented that he worked on behalf of "K&D Homes VA" when he texted plaintiff on September 12, 2021 at 2:19 p.m. *Id.* ¶ 99. Plaintiff also alleged that "K&D Homes VA" is an alias of KD Homes and this allegation is supported by several facts: (1) KD Homes maintains a website under the Crush name in which KD Homes styles itself as "KD Homes VA LLC," *id.* ¶ 102; (2) Villaflor held himself out initially as an affiliate of "K&D Homes VA" and then, only four months later, as an affiliate of Crush, *id.* ¶ 111; and (3) KD Homes shares at least two representatives with Crush, Liedtke and Villaflor, given that both hold themselves out to be affiliated with both entities, *id.* ¶¶ 105, 111. Considering the liberal pleading standard afforded to *pro se* litigants, plaintiff has pled sufficient facts to establish that KD Homes is the same "K&D Homes VA" referenced by Villaflor.

Plaintiff has also alleged that KD Homes used another alias, Crush. Plaintiff included a now-expired link in his second amended complaint to a website with the Crush heading stating that "KD Homes VA is a team of experienced, licensed real estate agents." *Id.* ¶ 102. Further, as discussed above, both entities share at least two representatives: Liedtke and Villaflor. *Id.* ¶¶ 105, 111. Liedtke has openly advertised herself as a member of Crush via the Facebook account. *Id.* ¶ 105. Villaflor identified himself as working with both companies in a short time frame. *Id.* ¶ 110. There is also evidence that KD Homes and Crush used the same marketing language through Villaflor's texts. *Id.* The text that plaintiff received from Villaflor on September 12, 2021, is identical to the December 16, 2021 text, aside from Villaflor changing the company from KD

Homes to Crush. *Id.* Taking these facts as true, KD Homes used the Crush alias for at least a short time period and the Court can infer that Villaflor was acting on behalf of KD Homes at that time.

KD Homes' liability for Villaflor's actions is further supported by the nature of the texts and calls. As evidenced in Villaflor's September 12 and December 16, 2021 text messages, the purpose of these communications was to offer real estate services. *Id.* ¶ 110. Plaintiff has alleged that KD Homes, through the statement on its website, holds itself out as a member of the real estate business. *Id.* ¶ 102. This evidence is sufficient to meet the VTPPA's presumption of liability. Va. Code Ann. § 59.1-514. Considering the intent behind the messages, Villaflor's representations about which company he was reaching out on behalf of, and the nature KD Homes' business, there is a logical inference that Villaflor had at least apparent authority to act on behalf of KD Homes, if not the authority of an employee. Restatement (Third) of Agency §§ 2.03, 7.03(2)(b). Therefore, plaintiff has pled facts sufficient to give rise to the conclusion that Villaflor was an agent of KD Homes from September to December 2021 and was authorized to contact plaintiff to solicit business from him.

          c.      **There are insufficient factual allegations under the second heading, "Cova keeps calling plaintiff and sending plaintiff text messages even after filing a dismissal motion in this action," to find KD Homes liable for the calls and texts discussed therein.**

The next chronological set of calls and texts in the second amended complaint appears under the second heading. Plaintiff alleges under this heading that he received six calls and text messages beginning on January 22 and ending on May 18, 2022. Compl. ¶¶ 86–95. The first five of these calls and texts came from the same number (9835) and a person who identified herself as "Natalie w \ Crush Real Estate Team @ Cova Home Realty LLC," on one occasion and "Natalie from Cova Home Realty" on another. *Id.* at 86–92. The sixth call came from another phone number (1495) and the caller stated she was calling on behalf of Crush. *Id.* ¶¶ 93–94.

After making these allegations, plaintiff ends this section by stating "[d]espite several clear and unmistakable requests to stop calling and texting [p]laintiff, *[d]efendant Cova continues* to call and text [p]laintiff." *Id.* ¶ 95 (emphasis added). Considering that this section is titled "*Cova keeps* calling plaintiff and sending plaintiff text messages after filing a dismissal motion in this action" and begins with a discussion of plaintiff's efforts to speak with representatives of Cova to stop them from calling and texting, *id.* ¶¶ 73–85, plaintiff has delineated this section as addressing Cova's actions. Therefore, KD Homes is not liable for these six calls and texts.

> **d.** **Plaintiff has also failed to allege sufficient facts to find KD Homes liable for the conduct under the fourth heading: "Cova keeps calling plaintiff and sending plaintiff text messages even after filing a second dismissal motion."**

This section addresses the final six phone calls and texts plaintiff received between May 31 and June 9, 2022 from three different phone numbers. *Id.* ¶¶ 112–27. The first two solicitations were a call and a text message from "Kealy Fraley COVA Home Realty / Crush Real Estate Team." *Id.* ¶¶ 112–16. The next three calls and texts were from "Elena Petrova with COVA Home Realty." *Id.* ¶¶ 117–23. The final call was from Villaflor using the same number as before (4177), who, when asked by plaintiff, asserted that he was with "Cova Home Realty." *Id.* ¶¶ 124–27.

Kealy Fraley and Elena Petrova identified themselves as agents of Cova. Kealy Fraley also used the Crush name, but only in conjunction with Cova, which does not connect her to KD Homes. *Id.* ¶¶ 112–16. Elena Petrova is not connected to KD Homes at all. Regarding Villaflor, plaintiff has not sufficiently alleged that this final call was on behalf of KD Homes. Villaflor stated that he was calling on behalf of Cova and plaintiff has not explained how this meant he was still working with KD Homes. Therefore, as with the allegations contained under the first and second headings of the second amended complaint's factual allegations, plaintiff has not alleged facts sufficient to prove that the calls and texts under the fourth heading are attributable to KD Homes.

Accordingly, the second amended complaint does not sufficiently allege that any of the callers acted as an agent or employee of Liedtke, and she is not liable for the solicitations made to plaintiff. Plaintiff's motion for default judgment against Liedtke should be **DENIED IN PART**. However, plaintiff has sufficiently alleged that five calls and text messages placed by Villaflor from September to December 2021 were made on behalf of KD Homes. Thus, plaintiff's possible recovery against KD Homes is limited to those five phone calls and texts and the Court proceeds to the merits of those claims.

**B.    The Merits of Plaintiff's Claims Under the TCPA**

Having established that Villaflor was acting as KD Homes' agent from September to December 2021, the Court now addresses the merits of plaintiff's claims as they relate to the five relevant solicitations.

      **1.    Plaintiff may not recover under Count I as 47 U.S.C. § 227(c)(5) does not provide a separate cause of action but instead authorizes claims predicated on regulations adopted pursuant to the TCPA.**

Under Count I, plaintiff alleges that KD Homes violated the TCPA by placing more than one phone call or text to plaintiff's phone without his consent and in violation of the TCPA under Section 227(c)(5). Compl. ¶ 159. In section 227 of Title 47 of the United States Code, Congress enacted the TCPA, but granted the Federal Communications Commission ("FCC") the authority to "prescribe regulations to implement" the TCPA. 47 U.S.C. § 227(c)(2). Along with granting the FCC this regulatory authority, Congress also created an individual right to sue if a person received more than one phone call in a 12-month period in violation of the regulations prescribed by the FCC. *Id.* at § 227(c)(5); 47 C.F.R. § 64.1200. Essentially, section 227(c)(5) authorizes a private right of action for violations of "the TCPA's Do-Not-Call registry regulations." *Clemens v. Consumer Sol. Ctr.*, 1:21cv1002, 2025 WL 2604494, at *6 (E.D. Va. July, 14, 2025). This

individual right to sue is what enables plaintiff to bring counts II through V under the regulations at 47 C.F.R. § 64.1200. However, section 227(c)(5) only authorizes plaintiff to sue on claims predicated on violations of the regulations adopted by the FCC. *See* 47 C.F.R. § 64.1200. Plaintiff cannot recover under Count I as section 227(c)(5) only provides the right of action, not the cause of action.

**2.  Plaintiff has alleged sufficient facts to support a cause of action under Count II.**

Count II alleges that KD Homes violated the TCPA by initiating telephone solicitations by calling and texting a residential phone number registered on the NDNCR. Compl. ¶¶ 163–64. Section 64.1200(c)(2) of Title 47 of the Code of Federal Regulations prohibits any "person or entity" from initiating a telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the [NDNCR] of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." A "telephone solicitation" under 47 C.F.R. § 64.1200 is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" and encompasses "any person or entity making telephone solicitations or telemarketing or text messages calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e), (f)(15). Plaintiff must allege sufficient facts to show that he received a "telephone solicitation" to his residential telephone despite being registered on the NDNCR, *id.* § 64.1200(c), on more than one occasion in a 12-month period from the same entity, 47 U.S.C. § 227(c)(5).

Plaintiff alleges that he owns a "wireless cellular telephone with a Virginia area code" which was purchased in 2019 for "residential purposes only." Compl. ¶¶ 13, 45. This "cellular telephone number has been listed with the [NDNCR] since February 10, 2005." *Id.* ¶ 138. Plaintiff

24

has alleged sufficient facts to prove that he was a residential telephone subscriber registered on the NDNCR during the relevant period.

Beginning on September 12, 2021, as discussed above, plaintiff received two text messages and three phone calls from an agent of KD Homes using the phone number 757-280-4177. *See supra* Part V.A. The first text message, on September 12, 2021, at 2:19 p.m. inquired whether plaintiff was "still interested in buying a house in the next 24 months." *Id.* ¶ 98. One minute earlier, plaintiff received a phone call from the exact same number. *Id.* ¶ 96. Two months later, plaintiff received another phone call from the same number on November 21, 2021. *Id.* ¶ 109. Less than a month later, plaintiff received another phone call and a nearly identical text message on December 16, 2021. *Id.* ¶¶ 109–10. These calls and texts came from Villaflor, a representative of a real estate business, KD Homes, who was reaching out to determine whether he could "encour[age] the purchase or rental of, or investment in, property." *See* Part. V.A.; 47 C.F.R. § 64.1200(f)(15). Each of the phone calls came from the same number, and on two occasions the calls directly coincided with text messages inquiring about plaintiff's interest in purchasing a home. Given these facts, plaintiff has established that KD Homes, through Villaflor, was engaged in a telephone solicitation on 5 occasions during a 4-month period. Thus, plaintiff may recover for each of the 5 solicitations under 47 C.F.R. § 64.1200(c)(2). *See* 47 U.S.C. § 227 (c)(5)(B) (noting that plaintiff may receive statutory damages for "each such violation").[13]

---

[13] KD Homes has waived the affirmative defenses to this action listed in 47 U.S.C. § 227(c)(5). Fed. R. Civ. P. 8(c). Additionally, KD Homes has waived the other defenses provided by 47 C.F.R. § 64.1200(c)(2) by default as the burden of proof for those defenses is on the defendant. *Id.*

    **3.**    **Plaintiff has not alleged sufficient facts to support the causes of action under Counts III, IV, or V.**

Under Count III, plaintiff claims that KD Homes violated the TCPA by failing to maintain a written policy as required by 47 C.F.R. § 64.1200(d)(1). Compl. ¶ 168. Plaintiff similarly alleges, in Count IV, that KD Homes violated the TCPA by failing to train personnel engaged in telemarketing on the "existence and use of the do-not-call list" under 47 C.F.R. § 64.1200(d)(2). *Id.* ¶ 173. Additionally, under Count V, plaintiff claims that KD Homes' agents failed to provide the identifying information required under 47 C.F.R. § 64.1200(d)(4) when engaging in telemarketing solicitations. *Id.* ¶ 178.

Under 47 C.F.R. § 64.1200(d)

> [n]o person or entity shall initiate any artificial or prerecorded-voice telephone call . . . or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.[14]

47 C.F.R. § 64.1200(d). Subsection (d) further describes the "minimum standards" that the person or entity must maintain. One such standard is keeping "a written policy, available upon demand, for maintaining a do-not-call list." *Id.* § 64.1200(d)(1). Another standard is that "[p]ersonnel engaged in . . . any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list." *Id.* § 64.1200(d)(2). Additionally, the caller "must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

---

[14] The Court notes the statutory ambiguity of this section as it relates to "a list of persons who request not to receive such calls." 47 C.F.R. § 64.1200(d). This phrase suggests that the person must have requested that the telemarketer refrain from calling them, but does not rule out the possibility that registering on the NDNCR may satisfy this provision as well. In any case, this issue does not change the Court's analysis.

*Id.* § 64.1200(d)(4). To recover under each of these counts, plaintiff must demonstrate that KD Homes initiated calls or texts[15] through its agent Villaflor without first having these standards in place, 47 C.F.R. § 64.1200(d)(1)–(2), and that he received more than one call in violation of this provision in a 12-month period, 47 U.S.C. § 227(c)(5).

As has already been established above, plaintiff received more than one call or text message for telemarketing purposes from KD Homes within a 12-month period. *See supra* Part V.A. Plaintiff has not, however, alleged sufficient facts to prove that KD Homes failed to maintain the standards required under 47 C.F.R. § 64.1200(d)(1)–(2). Plaintiff has only summarily asserted that "[d]efendants do not maintain a written policy for maintaining a do-not-call list" and "have not informed and trained personnel engaged in making calls and text messages on the use of the do-not-call list." Compl. ¶¶ 145–46. Nowhere else in the second amended complaint does plaintiff provide further factual support for these allegations. These "naked assertions . . . without some further factual enhancement" fall "short of the line between possibility and plausibility of entitlement to relief." *Marshall*, 2026 WL 181485, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plaintiff is not entitled to recover under Counts III and IV.

Plaintiff has also failed to establish a violation of under 47 C.F.R. § 64.1200(d)(4) because Villaflor included the appropriate identification information when contacting plaintiff. As for the three calls, plaintiff never alleges that he was able to speak with Villaflor. Therefore, Villaflor would not have been able to leave the necessary information listed in the regulation. Even so, right after two of the calls on September 12 and December 16, 2021, Villaflor texted plaintiff and signed off on the texts as "Paolo Villaflor with K&D Homes VA (757) 280-4177" and "Paolo Villaflor

---

[15] 47 C.F.R. § 64.1200(c) and (d) apply to "any person or entity making telephone solicitations or telemarketing or text messages calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

with Crush Real Estate Team (757) 280-4177." Compl. ¶¶ 96–98, 110–11. Thus, promptly after calling plaintiff on both of those dates, Villaflor identified himself, who he was calling on behalf of, and listed a phone number to reach him. Plaintiff was aware of who this caller was given the texts and the fact that plaintiff saved this phone number as "K&D." *Id.* Therefore, plaintiff cannot recover under Count V.

## C.     The Merits of Plaintiff's Claims Under the VTPPA

Plaintiff has alleged three counts under the VTPPA for violations of Va. Code Ann. §§ 59.1-511, 512, and 514, respectively. Compl. ¶¶ 185–205. Count VI alleges that KD Homes "initiated, or caused to be initiated, a telephone solicitation call at any time other than between 8:00 a.m. and 9:00 p.m. local time." *Id.* ¶ 186. Similar to Count V, plaintiff claims under Count VII that KD Homes' agents failed to provide the necessary identification information as required under the VTPPA when engaging in telephone solicitations. *Id.* ¶ 193–94. Finally, in Count VIII plaintiff alleges that KD Homes initiated, or caused to be initiated, a telephone solicitation to a number registered on the NDNCR, in violation of the VTPPA and despite his request to stop. *Id.* ¶¶ 200–01.

These provisions of the VTPPA apply to telephone solicitors who make or cause to be made telephone solicitations.[16] Va. Code Ann. § 59.1-510. As an initial matter, the Court finds

---

[16] According to Va. Code Ann. § 59.1-510, "'Telephone solicitation' means (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the contacted person's telephone.

that KD Homes is a telephone solicitor, as it has caused its agent, Villaflor, to initiate telephone solicitations to plaintiff per the VTPPA liability presumption. *See supra* Part V.A. Villaflor's five calls and text messages also fall under the definition of a telephone solicitation as they were sent to a wireless telephone with a Virginia area code, Compl. ¶¶ 13, 45, for the purpose of offering services and property for sale, *see supra* Part V.B.1.

Under Va. Code Ann. § 59.1-511, "[n]o telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation at any time other than between 8:00 a.m. and 9:00 p.m. local time at the contacted person's location, unless the telephone solicitor has obtained the prior consent of the contacted person." For each of the five calls or messages at issue, the complaint alleges that they were all either placed in the afternoon, or no time was alleged at all. Compl. ¶¶ 96–111. Therefore, plaintiff has failed to state a claim upon which relief could be granted under Count VI.

As to Count VII, plaintiff has similarly failed to state a claim upon which relief could be granted. Section 512 of Title 59.1 of the Virginia Code provides that "[a] telephone solicitor who makes a telephone solicitation via telephone call shall identify himself by his first and last names and the name of the person on whose behalf the telephone solicitation is being made promptly upon making contact with the recipient of such solicitation." As has already been discussed, each of Villaflor's text messages included the necessary information. *See supra* Part V.B.3. Additionally, plaintiff alleges that he did not speak with Villaflor on the three occasions he received a call from the 4177 number. Compl. ¶¶ 96–111. Therefore, Villaflor did not have the opportunity to "mak[e] contact with the recipient" to promptly provide such information. Even

---

'Telephone solicitor' means any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation on its own behalf or for its own benefit or on behalf of or for the benefit of a seller."

so, as discussed above, Villaflor promptly provided identification on the two occasions through his text messages. Thus, plaintiff has not pled sufficient facts to recover under Count VII.

Plaintiff's final claim alleges that KD Homes "initiated, or caused to be initiated, a telephone solicitation call to a telephone number on the [NDNCR] maintained by the federal government" in violation of Va. Code Ann. § 59.1-514(B). *Id.* ¶ 200–02. As previously discussed, plaintiff received five solicitations from an agent of KD Homes to his number registered on the NDNCR. *See supra* Part V.A. Therefore, plaintiff can recover against KD Homes for each of the five phone calls and texts under Count VIII[17] and the analysis now turns to the appropriate relief.

## VI.    RELIEF

### A.    Damages

Having established that plaintiff may recover under Counts II and VIII, the Court must now turn to the subject of relief. Unlike well-pleaded factual allegations, a defaulting defendant does not automatically admit what damages are owed. *Alstom Power, Inc. v. Graham*, No. 3:15cv174, 2016 WL 354754, at *2 (E.D. Va. Jan. 27, 2016). Thus, "[o]nce a court has determined liability in a default judgment setting, the court must 'make an independent determination regarding damages.' In making that independent determination, the Court may hold an evidentiary hearing or make a finding based on the evidence provided in the record." *Bhutta v. DRM Constr. Corp.*, No. 3:22cv288, 2023 WL 3901800, at *1 (E.D. Va. June 8, 2023) (citations omitted). However, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

---

[17] KD Homes, by not answering the second amended complaint, has waived the affirmative defenses provided under Va. Code Ann. § 59.1-514(C). Fed. R. Civ. P. 8(c). KD Homes has also admitted the allegations in the second amended complaint that establish that these communications fall under the definition of "telephone solicitation," *id.* § 59.1-514(D), because KD Homes did not have plaintiff's consent or a business or personal relationship with plaintiff, Compl. ¶¶ 42–44.

The complaint requests that the Court award plaintiff statutory damages for each violation found under the TCPA and VTPPA and actual damages under Count II. Compl. ¶¶ 158–205. However, at the hearing on January 23, 2026, plaintiff stated that he seeks to only recover statutory damages.

The TCPA provides that any person who has received more than one telephone call within a 12-month period can recover through either: (1) an action to enjoin such violations; (2) an action to recover the greater of the actual monetary loss or $500 for each violation; (3) or both actions. 47 U.S.C. § 227(c)(5). The Court also has the discretion to treble the amount of damages "[i]f the court finds that the defendant willfully or knowingly violated the regulations." *Id.* "Trebling is never to be done lightly. Given the consequences for a company, a trebled award must rest on solid evidence." *Krakauer v. Dish Network*, LLC, 925 F.3d 643, 662–63 (4th Cir. 2019) (finding that willfulness was present given the "repeated expressions of ignorance as to a widespread problem"). "[W]hen liability is established through default judgment rather than the merits, courts routinely award the minimum statutory damages amount." *Clemens*, 2025 WL 2604494, at *11–12 (granting default judgment for two TCPA violations but finding these violations lacked evidence of willfulness). The Court must determine whether the five violations attributable to KD Homes were willful or knowing.

The Court declines to exercise its discretion to treble damages under the TCPA. Plaintiff points the Court to various non-binding authority on this matter in his motion for default judgment. *See* ECF No. 84, at 17–19. However, the five violations attributable to KD Homes occurred over only a four-month span—on essentially three occasions—by one agent. This is hardly evidence of a widespread or repeated problem warranting treble damages, particularly where liability has been established through default judgment. *Krakauer*, 925 F.3d at 662–63. The Court has

31

thoroughly reviewed the entire record, and plaintiff has provided no more proof that these actions were willful or knowing.[18]  Thus, plaintiff is entitled to $2,500.00 for the five TCPA violations, the minimum statutory award.

Under the VTPPA, plaintiff may recover "damages in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation."  Va. Code Ann. § 59.1-515(A).  This award may be increased to $5,000 for the first and second violations if the Court finds a "willful violation."  *Id.* § 59.1-515(B).  Additionally, plaintiff may recover "reasonable attorneys fees and court costs."  *Id.* § 59.1-515(C).  For the reasons explained above, the Court declines to find that the violations under the VTPPA are willful.  Therefore, plaintiff is entitled to $16,500.00 under the VTPPA for the 5 violations.  As plaintiff is entitled to reasonable court costs under the VTPPA, the Court also awards plaintiff the $402.00 in costs.[19]

---

[18] Plaintiff has submitted additional proof that KD Homes used Crush as its doing-business-as name in the form of a printout from the Virginia Department of Professional and Occupational Regulation website indicating that "KD Homes VA LLC" was doing business as "Crush Real Estate Team" with an initial certification date of August 3, 2022. ECF No. 38-1. This additional evidence does not persuade the Court to consider any calls made on behalf of Crush to determine the willful or knowing nature of KD Homes' actions because this evidence only proves that KD Homes used the Crush alias in this capacity starting in August 2022, two months after plaintiff stopped receiving calls. *Id.*

Further, the Court does not consider KD Homes' failure to respond to plaintiff's interrogatories and requests for admission as plaintiff argues, ECF No. 84, at 4, because a defaulting defendant is only deemed to have admitted the well-pleaded allegations in the complaint, *Ryan*, 253 F.3d at 780 (explaining that only the well-pleaded allegations in the complaint are admitted and can be considered by the Court in default judgment).

[19] At the hearing, plaintiff confirmed that the total court costs, $402.00, requested in his brief in support of his motion for default judgment, ECF No. 84, at 22, was the correct amount.

## B.    Other Requested Relief

Plaintiff further requests that the Court award him injunctive relief to prevent "[d]efendant from placing calls or text messages to numbers on the [NDNCR]" and to "restrain and enjoin [d]efendants from further violations" under Counts II and VIII, respectively.  Compl. ¶¶ 166, 205. Granting an injunction is within the sound discretion of the Court.  *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*  "[A]n injunction 'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]' and 'should be carefully addressed to the circumstances of the case.'"  *De Simone v. Alfasigma USA, Inc.*, 847 F. App'x 174, 183–84 (4th Cir. 2021).

Both the TCPA and VTPPA provide plaintiff the right to bring an action after a violation to "enjoin such violation."  47 U.S.C. § 227(c)(5)(A); Va. Code Ann. § 59.1-515(a).  However, restraining defendants from ever placing calls to numbers registered on the NDNCR or from "further violations" as plaintiff requests, would be an overbroad restraint.  Plaintiff essentially requests that the Court enjoin KD Homes from ever violating the TCPA or VTPPA again, which is superfluous as the company is already under an obligation to do so.  Therefore, the Court denies this relief.

In addition to damages and injunctive relief, plaintiff seeks attorney's fees, pre-and post-judgment interest, and a "[r]eferral to the Virginia Attorney General for prosecution under 47

U.S.C. § 227(g)." Compl. ¶¶ 166, 205; ECF No. 84, at 19–22   Plaintiff confirmed at the hearing that he had not hired an attorney to assist in this case, thus his request for attorney's fees is moot.

As plaintiff fails to request pre-judgment interest in his second amended complaint, his request is denied.  Fed. R. Civ. P. 54(c).  However, plaintiff is entitled to post-judgment interest as "federal law mandates the awarding of postjudgment interest." *Quesinberry v. Life Ins. Co.*, 987 F.2d 1017, 1031 (4th Cir. 1993); 28 U.S.C. § 1961(a) (providing for mandatory post-judgment interest and the calculation for such relief).

Plaintiff has also not provided the Court with any authority regarding referring violations of the TCPA to a state attorney general, and the Court declines to do so.  *See* 47 U.S.C. 227(g) (granting state attorneys general the power to enforce the TCPA, but does not provide for referrals to a state Attorney General); *Clemens*, 2025 WL 2604494, at *12 (declining to grant relief on default judgment when plaintiff failed to provide support for such relief).

## VII.    RECOMMENDATION

For the foregoing reasons, it is hereby recommended that:

1.      Plaintiff's motion for default judgment, ECF No. 83, be **GRANTED IN PART** and **DENIED IN PART**;

2.      Judgment be entered in plaintiff's favor against KD Homes for violations of the TCPA under Count II and the VTPPA under Count VIII for the five solicitations on September 12, 2021, at 2:18 p.m.; September 12, 2021, at 2:19 p.m.; November 21, 2021; December 16, 2021; and December 16, 2021, at 5:21 p.m.;

3.      Plaintiff be awarded damages totaling $19,000.00, representing statutory damages under the TCPA ($2,500.00) and VTPPA ($16,500.00), and post-judgment interest as calculated under 28 U.S.C. § 1961(a); and

4.    Plaintiff be awarded court costs of $402.00 under the VTPPA.

## VIII.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984)

35

The Clerk is **DIRECTED** to send copies of this order to plaintiff, to KD Homes' registered Virginia office at 612 Cheeseman Ct, Newport News, Virginia, 23608, and to Liedtke at the same address.

_____
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
February 11, 2026